UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

KING OCEAN SERVICES LTD.,

     Plaintiff,

v.

AMERICA'S TRANS LOGISTICS, TELMEX-
HOGAR S.A., CHUBB DE COLOMBIA
COMPANIA DE SEGUROS S.A., and
ASEGURADORA COLSEGUROS S.A.,

     Defendants.

FILED by _____ D.C.

JAN 2 9 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, KING OCEAN SERVICES LTD. INC., by and through their undersigned attorneys, as and for their Complaint for a Declaratory Judgment against Defendants AMERICA'S TRANS LOGISTICS, TELMEX-HOGAR S.A., CHUBB DE COLOMBIA COMPANIA DE SEGUROS S.A., and ASEGURADORA COLSEGUROS S.A. respectfully allege upon information and belief as follows:

### JURISDICTION

1.     Plaintiff brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*. and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining the question and actual present controversy between the parties.

2.     An actual controversy of a justiciable nature exists between Plaintiff and Defendants involving the rights and obligations under a marine contract of carriage contained in a bill of lading.

3.     This is an action for declaratory relief within the Admiralty and Maritime jurisdiction of the United States District Court, pursuant to 28 U.S.C. §1333, and is brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rules governing admiralty and maritime claims.

4.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

5.     Plaintiff KING OCEAN SERVICES LTD. INC. ("KING OCEAN") is a business entity organized and existing under the laws of the Cayman Islands doing business as a vessel operating common carrier with tariffs and service contract duly on file with the Federal Maritime Commission as required by the U.S. Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, 46 U.S.C. § 1701, and recodified at 46 U.S.C. and 40101 *et seq*.

6.     Upon information and belief, Defendant AMERICA'S TRANS LOGISTICS ("ATL") is a corporation organized and existing under the laws of the state of Florida and registered to do business in the state of Florida.

7.     Upon information and belief, Defendant TELMEX-HOGAR S.A. ("TELMEX") is a foreign corporation organized and existing under the laws of the Republic of Colombia.

8.     Upon information and belief, Defendant CHUBB DE COLOMBIA COMPANIA DE SEGUROS S.A. ("CHUBB") is a foreign corporation organized and existing under the laws of the Republic of Colombia.

2

9.      Upon information and belief, Defendant ASEGURADORA COLSEGUROS S.A. ("COLSEGUROS") is a foreign corporation organized and existing under the laws of the Republic of Colombia.

### FACTUAL BACKGROUND

10.     On or about February 12, 2009, ATL made a booking with KING OCEAN for shipment of one Cummins power generator or "gen-set" from Port Everglades, Florida to Cartagena, Colombia via ocean carriage under booking number 10012755.  (See King Ocean Services Booking Sheet no. 10012755 attached hereto as Exhibit "A").

11.     KING OCEAN prepared bill of lading no. PEVCTG001482 for shipment of the generator on board the vessel M/V "Rio Zulia" for voyage no. 32SB.  (See copy of front side of KING OCEAN bill of lading attached hereto as Exhibit "B").

12.     The bill of lading was prepared based on information provided by the shipper. The shipper was listed as Advanced Logistics, Inc. and the consignee was listed as TMA Cargo Ltda.  (See Exhibit "B").

13.     Booking Sheet number 10012755 lists the quantity of goods as "1 x LCL"[1] and the description of goods is "GENSET (GENERATOR)".  (See Exhibit "A").

14.     On or about February 17, 2009, the said generator was received at Port Everglades by KING OCEAN's terminal operator strapped, secured and loaded onto a flatrack.

---

[1] LCL is a shipping term meaning "less than a container load." It is the quantity of freight which is less than that required for the application of a container load rate.  Loose Freight.  See U.S. Department of Transportation, Maritime Administration Glossary of Shipping Terms 2008 available at: http://www.marad.dot.gov/documents/Glossary_final.pdf.

15.     The generator was prepared for shipment by the shipper by being loaded onto and strapped and secured to a flatrack for placement into one of the holds of the M/V "Rio Zulia".

16.     On or about March 13, 2009, while the generator was in the process of being loaded by a crane onto the "Rio Zulia", the flatrack on which it had been placed, secured and strapped came free of the crane hooks and fell to the deck of the vessel.

17.     The generator was removed from the vessel and due to damage sustained from the fall was never shipped to Colombia and KING OCEAN therefore cancelled its bill of lading which had already been prepared. But for the fact that the cargo was damaged, KING OCEAN would have issued its bill of lading.

18.     On or about April 8, 2009, ATL made a claim for cargo damage against KING OCEAN. (See claim letter dated April 8, 2009 attached hereto as Exhibit "C").

19.     On or about May 11, 2009, TELMEX made a claim for cargo damage against KING OCEAN. (See claim letter dated May 11, 2009 attached hereto as Exhibit "D").

20.     On or about December 2, 2009, CHUBB and COLSEGUROS made a claim against KING OCEAN alleging that each were subrogated to the rights of TELMEX. (See e-mail correspondence dated December 2, 2009 attached hereto as Exhibit "E").

## KING OCEAN'S BILL OF LADING TERMS

21.     The preamble to KING OCEAN's bill of lading terms (see copy of reverse side of KING OCEAN bill of lading attached hereto as Exhibit "F") states in pertinent part:

> **In accepting this bill of lading, shipper, consignee, holder hereof and the owners of the goods (each of whom is sometimes referred to herein as "Merchant") agree, the same as if signed by each of them, that the receipt, custody, carriage, delivery and any transshipping of the goods are subject to the terms appearing on the face and back hereof, which shall govern the relations between**

4

> **Merchant and Carrier, its agents, contractors, employees, master and vessel in every contingency occurring and whether Carrier be acting as such or bailee.** Carrier shall have the right to stow containers, vans or trailers on deck and without notice as per Clause 8. The terms hereof shall not be deemed waived by Carrier except by written waiver signed by Carrier or its duly authorized agent. If any term of this bill of lading be repugnant under COGSA or any other law compulsorily applicable, such term only shall be void to that extent and no further.

(Emphasis supplied).

22.     Clause 1 ("CLAUSE PARAMOUNT") of KING OCEAN's bill of lading (see

Exhibit "F") states in pertinent part:

> 1.     **CLAUSE PARAMOUNT.** This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, as amended ("COGSA"), and shall apply to goods whether carried on or under deck, to carriage of goods to, from or between U.S. ports, or between non-U.S. ports, before the goods are loaded on and after they are discharged from the vessel and throughout the entire time the goods are in the custody of Carrier, whether acting as carrier, bailee, terminal operator, inland carrier or stevedore. Carrier shall be entitled to any and all defenses and limitations on liability provided under COGSA and any other compulsorily applicable law for any and all claims arising out of Carrier's custody or control of the Goods. Carrier shall also be entitled to any and all defenses and limitations provided in Carrier's contracts with underlying water or land carriers and all such limitations and defenses are incorporated herein by reference. In addition to the foregoing, Carrier shall not be liable for loss of or damage to goods resulting from hijacking or piracy.
>
> If this bill of lading is issued in or the goods are delivered to a locality where there is in force a compulsorily applicable Carriage of Goods by Sea Act, ordinance or statute similar to the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated at Brussels, August 25, 1924, then it is subject to such Act, ordinance or statute to the extent compulsorily applicable. If any term of this bill of lading be repugnant under COGSA or any other law compulsorily applicable, such terms only shall be void to that extent but no further. This bill of lading shall be construed and

the rights of the parties hereunder determined according to the laws of the United States.

23.    Clause 2 ("PARTIES COVERED") of KING OCEAN's bill of lading (see

Exhibit "F") states in pertinent part:

> 2.    **PARTIES COVERED.**  If the vessel is not owned by or chartered by demise to Carrier, this bill of lading shall take effect, for purposes of limitation of liability only, as a contract either with the owner or demise charterer.  If it shall be adjudged that any person other than the owner or demise charterer (including the master, time charterer, agents, stevedores, lashers, terminals and other independent contractors) is the carrier or bailee of the goods, or is otherwise liable in contract or in tort, all rights, exemptions, and limitations of liability provided by law and by the terms of this bill of lading shall be available to such other persons.  In contracting for the foregoing rights, exemptions and limitations of liability, Carrier is acting as agent and trustee for such persons.

24.    Clause 16 ("VALUATION") of KING OCEAN's bill of lading (see Exhibit "F")

states in pertinent part:

> 16.    **VALUATION.**  In the event of loss, damage or delay to goods exceeding in actual value the equivalent of $500.00 lawful money of the United States, per package, or in case of goods not shipped in packages, per customary shipping unit, unless the nature and higher value of goods have been declared by Merchant herein and extra charges paid as provided in Carrier's tariff. However, Carrier's liability shall not exceed the invoice value of the goods.  The word "package" shall include a container skid, cradle, pallet or unitized load, group or assemblage.  When COGSA does not apply on its own force, the $500.00 limitation shall apply to each shipping customary freight unit or piece, provided always that any compulsorily applicable limitation which is greater than the $500.00 limitation shall apply in place of the $500.00 limitation.

25.    Clause 18 ("FINAL AGREEMENT") of KING OCEAN's bill of lading (see

Exhibit "F") states in pertinent part:

> 18.    **FINAL AGREEMENT.**   All prior agreements, dock receipts or freight engagements for the shipment of the goods

and all other arrangements are superseded by this bill of lading and Carrier's tariff rules and regulations which are incorporated herein by reference.  Copies of Carrier's tariffs are available upon request.

26.     KING OCEAN's bill of lading alerts the shipper to the fact that it has the

opportunity to avoid KING OCEAN's limitation of liability as the face of the bill of lading

states in pertinent part: "Shipper declared value $_____ (AS

PER TARIFF AND CARRIERS LIABILITY LIMITS (SEE CLAUSE 13 OVERLEAF)" (See

Exhibit "B").

27.     The front side of KING OCEAN's bill of lading (See Exhibit "B") also states

in pertinent part:

The goods to be delivered at the abovementioned port of discharge or place of delivery, whichever is applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof to which the Shipper and for Consignee agree to accepting this Bill of Lading.

## DECLARATORY RELIEF

28.     An actual controversy exists between Plaintiff KING OCEAN and Defendants

TELMEX, ATL, CHUBB and COLSEGUROS as to their respective rights, obligations and

liabilities including:

A.     Whether the terms of KING OCEAN's bill of lading govern the rights,

obligations and liabilities of the parties;

B.     Whether the total amount of damages recoverable by TELMEX, ATL,

CHUBB and COLSEGUROS collectively or individually, if any, are limited to $500.00 per

package or customary freight unit according to Clause 16 of KING OCEAN's bill of lading

and the U.S. Carriage of Goods By Sea Act, 46 U.S.C.A. § 30701 note (2007) ("COGSA").

29.     By its own clear terms, COGSA governs all contracts for the "carriage of goods by sea to or from ports of the United States in the foreign trade." *See* COGSA at §13.

30.     A bill of lading is the contractual agreement between the carrier, shipper and the consignee for the carriage of goods and is synonymous with the term "contract of carriage." *See* Crowley American Transport, Inc. v. Richard Sewing Machine, Co., 172 F.3d 781, 783 n.2 (11th Cir. 1999); *see also,* Otto Wolff Handelsgesellschaft, mbH v. Sheridan Transportation Co., 800 F.Supp. 1359, 1361 (E.D.Va. 1992). The bill of lading continues to govern the rights and obligations of the parties until delivery. *See* David Crystal, Inc. v. Cunard SS Co., 339 F.2d 295, 297 (2d Cir. 1964), *cert. denied* 380 US 976, 85 S.Ct. 1339, 1 L.Ed.2d 271 (1965).

31.     COGSA "provides an exclusive remedy, barring all other theories of liability . . . ." Polo Ralph Lauren v. Tropical Shipping & Construction Co., 15 F. Supp. 2d 1345, 1348 (S.D. Fla. 1998); St. Paul Fire & Marine v. Marine Transp. Svcs., 727 F. Supp. 1438, 1442 (S.D. Fla. 1989).

32.     Contracts of carriage may bind third parties not named in the contract who fall into a "well defined class of readily identifiable persons" that the contract intends to benefit. *See* Polo Ralph Lauren, 215 F. 3d at 1222 (citing Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 640 (11th Cir.1990); Hale Container Line, Inc. v. Houston Sea Packing Co., 137 F.3d 1455, 1465 (11th Cir.1998); Generali v. D'Amico, 766 F.2d 485, 490 (11th Cir.1985). In fact a bill of lading may bind multiple parties and may define the rights and responsibilities of a broad set of parties. *See* All Pacific Trading Inc. v. Vessel M/V Hankin Yosu, 7 F.3d 1427, 1432 (9th Cir. 1993).

33.    The phrase "carriage of goods" covers "the period of time from the time when the goods are loaded on to the time when they are discharged from the ship." *See* COGSA § 1(e). However, COGSA permits agreements and stipulations relating to times "prior to loading . . . on the ship" and "subsequent to the discharge from the ship." *See* 46 U.S.C. §§ 7,12; *see also* AAA Int'l Freight Forwarding Group, Inc. v. King Ocean Serv. de Venez., S.A., 2000 U.S. Dist. LEXIS 21075 (S.D. Fla. 2000) (holding that the Harter Act expressly authorizes the parties to extend COGSA to the pre-loading phase of the shipment); DGAF (Osterreich) v. Dart Container Co., 1982 AMC 2600, 541 F.Supp. 9 (D.N.J. 1981).

34.    Clause 1 of KING OCEAN's Bills of Lading provides that COGSA will govern during the entire period that KING OCEAN had custody of the cargo and extends to the periods before loading and after discharge in accordance with COGSA § 7, which provides:

> Nothing contained in this chapter [this note] shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to loading on and subsequent to the discharge from the ship on which the goods are carried by sea.

*See also* Miller Export Corp., vs. Hellenic Lines, Ltd., 534 F.Supp. 707, 710 (S.D.N.Y. 1982).

35.    Based upon Clause 1 of KING OCEAN's bill of lading and the fact that COGSA permits such clauses, COGSA is applicable to the instant action, and the provisions of COGSA will apply contractually through incorporation during all relevant periods, including the incident in question while the generator was being loaded aboard M/V "Rio Zulia".

36.    COGSA allocates the risk of loss for cargo damaged during international

transportation under contracts evidenced by bills of lading. *See* Stolt Tank Containers, Inc.

v. Evergreen Marine Corp., 962 F.2d 276, 279 (2d Cir. 1992). COGSA permits carriers to

limit their liability for damaged or non-delivered goods as follows:

> Neither the carrier nor the ship shall in any event be or become
> liable for any loss or damage to or in connection with the
> transportation of goods in an amount exceeding US $500 per
> package lawful money of the United States, or in case of
> goods not shipped in packages, per customary freight unit, . . .
> unless the nature and value of such goods have been declared
> by the shipper before shipment and inserted in the bill of
> lading.  This declaration, if embodied in the bill of lading, shall
> be prima facie evidence, but shall not be conclusive on the
> carrier.

*See* COGSA § 4(5); *see also* Assicurazioni Generali v. D'Mico, 766 F.2d 485 (11th Cir.

1985).

37.    A shipper may increase the carrier's liability by declaring the nature and value

of the goods shipped and paying a higher freight rate.  Failure to make such a declaration

on the bill of lading will result in the carrier's liability being limited to $500.00 per package

or per customary freight unit if the goods are not shipped in packages. *See* Stolt Tank, 962

F.2d at 279.

38.    A carrier can avail itself of COGSA's liability limitation only if the shipper has

had a fair opportunity to escape the limitation by increasing the cargo's valuation above the

$500.00 per package limitation and paying a higher charge. *See* Brown & Root Inc. v. M/V

Peisander, 648 F.2d 415, 420 n.11 (5th Cir. 1981).  In the 11th Circuit the shipper must

have a fair opportunity to declare a higher value or the actual value of goods it entrusts to

a carrier. *See* Insurance Co. of N. America v. M/V Ocean Lynx, 901 F.2d 934, 939 (11th

Cir. 1990), *cert. denied*, 498 U.S. 1025.[2]  The carrier has the initial burden of producing

*prima facie* evidence showing that it provided notice to the shipper that it could pay a higher

rate and opt for a higher liability:

> Courts have developed two preconditions to invoking [§ 4(5)'s]
> limitation on liability.  First, the carrier must give the shipper
> adequate notice of the $500 limitation by including a **'clause
> paramount'** (emphasis supplied) in the bill of lading that
> expressly adopts the provisions of COGSA.  Second, the
> carrier must give the shipper a fair opportunity to avoid
> [§ 4(5)'s] limitation by declaring excess value.

*See id*. at 939.  The 11th Circuit requires a statement of incorporation of COGSA

somewhere in the bill of lading, i.e., the Clause Paramount discussed above. See, *Id*.

39.    The terms of KING OCEAN's bill of lading are set forth in its tariff on file with

the Federal Maritime Commission and thus TELMEX and ATL are deemed to have had

knowledge of those terms and are bound by same.  *See* <u>M/V Ocean Lynx</u>, *supra* at 939.

40.    Although not named in the bill of lading, TELMEX and ATL are bound by its

terms. *See* <u>Polo Ralph Lauren</u>, 215 F. 3d at 1222-23 (although not named in the bill of

lading, cargo owner fell under definition of "merchant" contained in bill of lading).

41.    When the shipment was booked, neither the shipper, the consignee nor any

other party ever declared a higher value for the generator in order to avoid COGSA's

limitation of liability. (See Exhibit "A'). There was also no shipper declared value on the

KING OCEAN bill of lading. (See Exhibit "B").This is reflected on the face of KING

OCEAN's Bill of Lading no. PEVCTG001482 in the space entitled "Shipper Declared

Value" which has been left blank. (See Exhibit "B").

---

[2] The purpose of a Clause Paramount in a bill of lading is to establish what law will apply to the entire contract. *See* <u>Z.K. Marine, Inc. v. M/V Archigetis</u>, 808 F.Supp. 1561, 1564 (S.D. Fla. 1992).  A Clause Paramount is not designed to detail the specific provisions of the governing law; it simply functions to identify the legal framework within which the remaining provisions of the bill of lading will be construed. *See id*.

42. Therefore the generator constitutes the package for purposes of COGSA's limitation of liability and the Plaintiff's total liability, if any, is limited to $500.00 per the one (1) generator. *See e.g.* Indus. Mar. Carriers (Bahamas), Inc. v. Siemens Westinghouse Power Corp., 2002 U.S. Dist. LEXIS 14339 (E.D. La. 2002) (finding that generator was "package" for purposes of COGSA's limitation of liability); *see also* Caterpillar Overseas, S.A. v. Marine Transport, Inc., 900 F.2d 714, 724 (4th Cir. 1990) (finding that tractor was "package" for purposes of COGSA's limitation of liability).

43. Although King Ocean never actually issued its bill of lading because the generator fell to the deck of the vessel during loading, the Defendants are still bound by the terms of that bill of lading which would have been issued in the regular course of business. *See* AAA Int'l Freight Forwarding Group, 2000 U.S. Dist. LEXIS 21075 at *12-13 citing Baker Oil Tools, Inc. v. Delta Steamship Lines, Inc., 562 F.2d 938 (5th Cir. 1977)[3] (holding that, although bill of lading was never issued because goods were never loaded onto ship, trial court properly found the terms of the contract between the parties were embodied in the bill of lading that would have issued); *see also* New Hampshire Ins. Co. f/u/b/o Cruisers de Panama, S.A. v. Seaboard Marine, Ltd., 1992 AMC 279, 281 (S.D.Fla. 1991) ("A carrier's bill of lading may serve to limit the carrier's liability for damage to goods even when the bill of lading is issued after the damage occurs."); *see also* Luckenbach S.S. Co., Inc. v. American Mills Co., 24 F.2d 704, 705 (5th Cir. 1928) ("[A] shipper, in the absence of a special contract, must be presumed to deliver his goods on the terms and conditions usually and customarily imposed by the carrier in the regular course of business."); Caterpillar Overseas, 900 F.2d at 719-20 (holding that where parties were both

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207-1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

"experienced and sophisticated in the shipping business" and had a history of doing business together they would be held to have understood that the cargo was covered by the terms of the bill of lading).

WHEREFORE, Plaintiff KING OCEAN SERVICES LIMITED demands judgment of this Court against Defendants:

(a)     In favor of Plaintiff and against Defendants AMERICA'S TRANS LOGISTICS, TELMEX-HOGAR S.A., CHUBB DE COLOMBIA COMPANIA DE SEGUROS S.A., and ASEGURADORA COLSEGUROS S.A. limiting Plaintiff's entire liability to $500.00 under KING OCEAN's bill of lading should Plaintiff be found liable at all for any damages to any of the Defendants.

(b)     In favor of Plaintiffs for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

_____   Dated: January 29, 20

Charles G. De Leo
Fla. Bar No. 353485
Email: cdeleo@fowler-white.com
Jan M. Kuylenstierna
Fla. Bar No. 375985
Damon T. Hartley
Fla. Bar No. 0041156

FOWLER WHITE BURNETT P.A.
Attorneys for Plaintiffs
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

**KING OCEAN SERVICES**

# BOOKING
# 10012755

KING OCEAN SERVICES LTD.
11000 N.W. 29th Street
Suite 201
Doral, FL. 33172
Phone: 305-591-7595

| Reference | Booked by: PGALLEGO (February 12, 2009 @ 02:20 PM) | Bill to: |
|---|---|---|

| | |
|---|---|
| Job Number: **00109009-02** | Origin: **N.A.** |
| Line: **KING OCEAN SERVICES LTD.** | Loading: **PORT EVERGLADES, UNITED STATES** |
| Vessel: **GENERAL ACCOUNT**   Departure: **12/31/2009** | Discharge: **CARTAGENA, COLOMBIA** |
| Voyage: **GENERAL**   Arrival: **12/31/2009** | Final Dest: **CARTAGENA, COLOMBIA** |
| Attention: **REYNA** | Trucker: **SHIPPER'S OWN TRUCKING** |
| Phone: **305-4776200** | Container Yard: **PORT EVERGLADES CONTAINER YARD** |

| Shipper: **4705-0** | Forwarder: **4705-0** |
|---|---|
| **AMERICA'S TRANS LOGISTICS** (ATL) 3303 NW 97 AV DORAL MIAMI, FL. 33172 | **AMERICA'S TRANS LOGISTICS** (ATL) 3303 NW 97 AV DORAL MIAMI, FL. 33172 |
| Phone 305-5139448   Fax: | Phone 305-5139448   Fax: |
| Shipper Ref: | Forwarder Ref: |

| Consignee: **1973-0** | Notify: |
|---|---|
| **CUMMINS DE LOS ANDES S.A.** AVE. CIUDAD DE CALI No.11-22 BOGOTA,   COLOMBIA | **SAME AS CONSIGNEE** |
| Phone   Fax: | Phone   Fax: |

| Qty. Equipment | Spotting Date | Spotting Time | Move | Spotting Instructions / Remarks | Temperature |
|---|---|---|---|---|---|
| 1 X LCL | | T.B.A. | P/P | GENSET(GENERATOR) Delivery terminal - LCL/FCL Sun Terminals 4000 Macintosh Rd. Hollywood, FL 33316 | |

**EXHIBIT**
tabbies **"A"**

*EXPORT B/L AES-ITN CUTOFF FOR COLOMBIA / COSTA RICA  8AM ON THURSDAYS*
*EXPORT B/L AES-ITN CUTOFF FOR ARUBA / CURACAO/ BONAIRE /LA GUAIRA 5PM THURSDAYS*
*EXPORT B/L AES-ITN CUTOFF FOR PUERTO CABELLO / MARACAIBO 5PM ON FRIDAYS*
*CUT-OFF FOR IMO'S FOR COSTA RICA / COLOMBIA ON WEDNESDAY 12PM*
*CUT-OFF FOR IMO'S FOR ALL OTHER MARKETS IS ON WEDNESDAY 4PM*

# King Ocean Services LTD.

**KING OCEAN SERVICES**

**BILL OF LADING**
International Bill of Lading

| Shipper - Exporter / Proveedor - Exportador<br>ADVANCED LOGISTICS,INC  (1261-0)<br>3301 NW 97 AVENUE<br>MIAMI FL.  33172 USA | | |
|---|---|---|

**Bill of Lading**   **PEVCTG001482**

**Booking Number:**                    **Job Number**  00109034-02

**Export References**   **MIAEO1271**

| Consignee / Consignatario<br>TMA CARGO LTDA<br>NIT:800.252.819-8 CODIGO ACI 3752/020<br>AV.DORADO NO.84A-55 MODULO NARANJA<br>OF. 230 CTRO DORADO PLAZA<br>TEL: 5714103026<br>BOGOTA COLOMBIA. |
|---|

**Forwarder Agent / Agente Expedidor**     **Broker:**

**Forwarder Ref.**  .                                  **F.M.C. No.**   **N/A 4705**

**Notify Party / Notificar**
**SAME AS ABOVE**

**Routing and Instructions / Ruta e Instrucciones**

| Place of Receipt / Lugar de Recibo<br>PORT EVERGLADES, US | Precarriage by / Transportado por |
|---|---|

| Vessel and Voyage<br>RIO ZULIA / 32SB | Port of Loading / Puerto de Carga<br>PORT EVERGLADES, US | Loading Pier / Terminal | Type of Move / Movimiento<br>LOOSE CARGO |
|---|---|---|---|
| Port of Discharge / Puerto de Descargue<br>CARTAGENA, CO | Place of Delivery / Lugar de Destino Final<br>CARTAGENA, CO | Point and Country of Origin<br>PORT EVERGLADES | Service Contract<br>.N/A. |

**PARTICULARS FURNISHED BY SHIPPER**

| Marks & Numbers | DR/TIR | No. of Pkgs | HM | Description of Packages and Goods | Gross | Measurement |
|---|---|---|---|---|---|---|
| | | | | *Freight Collect*<br>*THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH*<br>*THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.* | | |
| | | **TOTALS** | | 0 | | |

**EXHIBIT "B"**

**Shipper declared value $ _____**   AS PER TARIFF AND CARRIERS LIABILITY LIMITS (SEE CLAUSE 13 OVERLEAF)

# * C A N C E L E D *

| Charge Description | Prepaid | Collect |
|---|---|---|

Received by the Carrier for shipment by ocean vessel between port of loading and port of discharge, and for and for arrangement or procurement of pre-carriage from place of receipt and on carriage to place of delivery where state above. The goods as specified above in apparent good order and condition unless otherwise state. The goods to be delivered at the abovementioned port of discharge or place of delivery, whichever is applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof to which the Shipper and for Consignee agree to accepting this Bill of Lading.
IN WITNESS WHERE OF three (3) original Bills of Lading have been signed not otherwise states above, one of which being accomplished, the others shall be void.

**Dated At**   **PORT EVERGLADES, US**   **On**   **March 13, 2009**

**By (Name of Agent)**         **KING OCEAN AGENCY INC.**

**Per (for the Master)**

**TOTAL FREIGHT AND CHARGES IN US $**

*TERMS OF BILL OF LADING CONTINUED ON BACK HEREOF*        **Page. 1**




AMERICA'S TRANS LOGISTICS

Miami, April 8 2009

Srs
King Ocean Services
11000 NW 29th Street Suite 201
Doral, Fl 33172

Atn. Carlos Perdomo
Cc Ciro Mendez

Ref: Incident on M/V Rio Zulia – Voy 32 3/13/09

We hereby provide you with our notice of claim regarding the following matter:

Vessel : Rio Zulia /32SB
BOL : PEVCTG001482
Container: Flat Rack # GESU 756991-9
Port of Loading: Port Everglades
Port of Destination: Cartagena – Colombia
Place of Delivery: Port Everglades
Shipment: DFLC 60 HZ GENSET Ref 1250 S/N A090229773
Shipper: Cummins Power Generation
Consignee: Telmex Hogar S.A.

This is a formal notice of claim on the captioned shipment. The estimated amount of the loss is $ 245.146.00 and is a result of the dropping of the cargo as stated in the survey reports (attached).

We hold you responsible for the loss sustained and hereby declare that we reserve the right to file a claim with you when the full extent of the claim is ascertained.

Please sign a copy of  this notice to acknowledge receipt and  send us your claim number at your earliest convenience.

Thank you for your cooperation.

Maria Claudia Ucros
President

MARIA ALFONSO
MY COMMISSION # DD630057
EXPIRES November 29, 2012

EXHIBIT

"C"



Bogotá, mayo 11 de 2009

Señores
**King Ocean Services**
11000 NW 29th Sreet suite 201

Asunto :   Reclamo siniestro M/V Rio Zulia – Voy 32 3/13/09

Respetados señores:

De manera atenta presentamos reclamación por siniestro de la mercancía relacionada en la factura comercial No. 3644580410 de nuestro proveedor Cummins Power Generation por valor de USD 245,146.00, hecho ocurrido el 13 de Marzo de 2009 durante el cargue para transporte internacional Miami – Cartagena con los siguientes datos:

- Vassel: Rio Zulia /32SB
- BOL: PEVCTG001482
- Container: Flat Rack # GESU 756991-9
- Port of Loading: Port Everglades
- Port of Destination: Cartagena Colombia
- Place of Delivery: Port Everglades
- Shipment: DFLC 60HZ GENSET Ref: 1250 S/N A090229773
- Shipper: Cummins Power Generation
- Consignee: Telmex Hogar S.A.

Cordialmente,

**David Ernesto Pulido**
Jefe de Comercio Exterior
Telmex Hogar S.A.
calopeze@cable.net.co
(571) 6500300 Ext. 22669

**EXHIBIT**
tabbies
"D"

1/19/2009
2:55pm

Tu Cable Tel comunicaciones S.A. E.S.P. Vigilada Superintendencia de Servicios Públicos SSP Nit: 830.054.937-9. Carrera 11A No. 94 - 76. Bogotá, D.C. Colombia. PBX: (1) 6 500 300. Servicio al cliente: (1) 7 500 500, (1) 6 500 500. Fax (1) 616 40 82. servicioalcliente@cable.net.co, www.libre.com.co  Telmex Hogar S.A. Nit: 830.053.800-4. Licenciataria del servicio de televisión por suscripción en virtud del contrato 205 de 1999. Vigilado y regulado por la Comisión Nacional de Televisión -CNTV- Calle 72 No. 12-77. Bogotá D.C. Cra. 11A No. 94-76. PBX: (1) 6 500 300. Quejas y reclamos: (1) 6 500 500. Fax: (1) 616 40 82. servicioalcliente@cable.net.co, www.telmex.com.co Medellín: Carrera 40 No.52-41. Tel: (4) 5 800 200. Fax: (4) 3523858. Cali: Avenida 4 Norte No. 6N-69. Edificio Torre Empresarial Siglo XXI Local 103. Tel: (2) 6532121. Pereira: Carrera 17 No.12-124. Local 5, Centro Empresarial Pinares. Tel: (6) 3440000. Fax: (6) 325 48 93.

posible way the interest of our principals. BEST REGARDS. WALTER BAUER. ATTORNEY FOR CHUBB AND COLSEGUROS.

----- Mensaje reenviado ----
**De:** walter bauer <bauer_asc@yahoo.com>
**Para:** carlos@king-ocean.com
**Enviado:** jue, enero 7, 2010 12:36:54 PM
**Asunto:** Rv: Rv: SINIESTRO PORT EVERGLADES - TELMEX HOGAR - MOTONAVE RIO ZULIA V.32SB B/L PEVCTG001482

Dear Mr.Perdomo :
Do you have any news regarding caption matter and our message to you asking for P&I CLUBS position ? Our clients pressing to know
how we are going to handle this matter. Please advise at your earliest convenience . BEST REGARDS. WALTER BAUER - ATTORNEY FOR CHUBB AND COLSEGUROS .

----- Mensaje reenviado ----
**De:** walter bauer <bauer_asc@yahoo.com>
**Para:** carlos@king-ocean.com
**Enviado:** mié, diciembre 2, 2009 8:23:37 PM
**Asunto:** Rv: SINIESTRO PORT EVERGLADES - TELMEX HOGAR - MOTONAVE RIO ZULIA V.32SB B/L PEVCTG001482

Dear Mr.Perdomo:
Further to the phone conversation that we had yesterday DECEMBER 1 2009 , please be advised that we have been appointed by the COLOMBIAN INSURANCE COMPANIES named CHUBB DE COLOMBIA CIA DE SEGUROS S.A. and COLSEGUROS ,to carry out any measure directed to protect their interest regarding caption casualty. With this regard we formaly present before you a claim in the amount of COLOMBIAN PESOS 590,022,835 paid by mentioned insurance companies to TELMEX HOGAR ,company assured at the moment of the accident. Please advise soonest your position and / or OWNER / CHARTERER P&I CLUBS involved in order to proceed accordingly. BEST PERSONAL REGARDS. WALTER BAUER - ATTORNEY FOR CHUBB AND COLSEGUROS.

----- Mensaje reenviado ----
**De:** Milton Maduro < mmaduro@king-ocean.com >
**Para:** walter bauer <bauer_asc@yahoo.com>
**Enviado:** vie, noviembre 27, 2009 5:43:53 PM
**Asunto:** Re: SINIESTRO PORT EVERGLADES - TELMEX HOGAR - MOTONAVE RIO ZULIA V.32SB B/L PEVCTG001482

Estimado Sr Bauer,
Investigando un poco mas sobre este tema, veo que la persona que viene manejando este reclamo es el Sr Carlos Perdomo (King Ocean Miami).  Agradezco por favor ponerse en contacto con el para que asi le den el tramite requerido a este proceso.

Carlos M. Perdomo
King Ocean Services Ltd
11000 NW 29th Street
Suite 201
Miami , FL 33172
Ph: 305-591-7595
Fx: 305-593-1815


EXHIBIT
"E"



**1. CLAUSE PARAMOUNT.**

**2. PARTIES COVERED.**

**3. SCOPE OF VOYAGE.**

**4. RISK AND LIABILITIES.**

**5. PACKING OF CONTAINERS—SHIPPER'S GUARANTY - INDEMNITY.**

**6. PERISHABLE GOODS.**

**7. LIVE ANIMALS.**

**8. STOWAGE ON DECK.**

**9. TRANSSHIPMENT.**

**10. NOTIFICATION, DELIVERY AND STORAGE.**

**11. BOTH TO BLAME COLLISIONS.**

**12. FREIGHT, LIENS, QUANTITY.**

**13. BOTH TO BLAME COLLISIONS.**

**14. GENERAL AVERAGE.**

**15. FIRE.**

**16. VALUATION.**

**17. NOTICE OF CLAIM – TIME FOR SUIT – JURISDICTION.**

**18. FINAL AGREEMENT.**

**19. SHIPPER'S WARRANTIES.**

**20. THROUGH AND ON BOARD BILLS OF LADING.**

**21. CLAIMS.**